JAMES L. BROWNE, APPELLANT, v. CHARLES PALMER ET AL., APPELLEES.

FILED NOVEMBER 6, 1902.   No. 12,065.

Commissioner's opinion, Department No. 3.

1. **Affidavit:** NOTARY PUBLIC OF FOREIGN GOVERNMENT OR SISTER STATE. An affidavit taken before a notary of a sister state or foreign government, is properly received in support of a motion in the courts of this state.

2. **Consul is Notary Within Meaning of Statute.** Section 1750, Revised Statutes of the United States, confers on consular officers the power "to perform any notarial act which any notary public is required or authorized by law to do within

the United States." *Held,* That such consular officer is a notary public within the meaning of our statute, and authorized to take and certify affidavits of depositions for use in the courts of the state.

3. **Review**: DEFENDANT SERVED BY PUBLICATION: PETITION IN ERROR. A defendant served by publication only, who has parted with his interest in the property involved in the action, is not entitled to have the judgment entered therein set aside under the provisions of section 82 of the Code of Civil Procedure,* but this court can review the action of the district court in such case only on petition in error.

4. **Deed**: EASEMENT: HIGHWAY: STREET IMPROVEMENTS: RESERVATION. H. and M., being the owners of a large tract of land, donated a part of the tract to the city of Omaha for park purposes, under the circumstances fully set out in the opinion filed in *City of Omaha v. Megeath,* 46 Nebr., 502. A strip eighty feet wide entirely surrounding the park tract was also conveyed to the city, the deed thereto reciting: "And for the consideration aforesaid we also hereby convey to the said city of Omaha a strip of land eighty (80) feet wide, adjoining and entirely surrounding said park, for the purpose of a public street or highway, and that the said city of Omaha shall lay out and improve said street or highway, and shall forever after keep the same in good order and repair at the expense of the said city, and in case of failure or neglect to comply with any or all of said conditions, then and in that case the title to said street or highway shall revert back and reinvest in the said parties of the first part, their heirs or assigns, according to their original interests." *Held,* That the owners of lots abutting said eighty-foot strip could not be charged with the cost of sidewalks constructed thereon by the city, or with any work properly classed as a street improvement.

APPEAL from the district court for Douglas county. Action to foreclose a tax certificate. Heard below before FAWCETT, J. Decree for the defendants. Plaintiff appeals. *Affirmed.*

*W. A. Saunders,* for appellant.

*Howard H. Baldrige* and *W. A. De Bord, contra.*

DUFFIE, C.

The appellant Browne commenced this action to foreclose a tax certificate issued by the county treasurer

* Cobbey, Annotated Code, sec. 82, and see note.

of Douglas county covering the south 75 feet of lot 9, block 9, in Hanscom Place, an addition to the city of Omaha. The taxes for which the lot was sold included $22.77 for general city and county taxes and $98.63 for taxes levied for the construction of a sidewalk on Woolworth avenue, abutting said lot. The defendants being non-residents of the state were served by publication only. No appearance being made, a decree was entered on the 5th of January, 1900, foreclosing the tax certificate and ordering a sale of the premises to satisfy the amount found due. March 1, at a subsequent term of the court, the defendants joined in a motion to set aside the decree on the ground that they were served by publication only, and had no actual notice of the pendency of the suit. They also filed an answer admitting the sale of the real estate for taxes as set forth in the petition, and alleging that on the 15th of December, 1899 (which was during the pendency of the action), the defendants George Macleod and Christina Macleod Allen conveyed their interest in said lot to the defendant Charles Palmer. The answer offers to pay the amount of regular taxes assessed against the property, and alleges that the sidewalk tax was levied without authority, and was an illegal charge against the property, on account of a certain condition in a deed made by Hanscom and Megeath to the city of Omaha, conveying to said city what is known as "Hanscom Park," and which condition will hereafter be referred to. The motion to set aside the decree and allow the defendants to come in and answer and defend the action, was supported by the affidavit of Charles Palmer, taken before a notary public of Prince Edward Island, Dominion of Canada. April 21, 1900, the court sustained the motion as to the defendant Charles Palmer but denied it as to the other defendants, without prejudice to their right to renew said motion at a subsequent date. The record does not disclose upon what ground the court overruled the motion as to the defendants George Macleod and Christina Macleod Allen, but it was undoubtedly because these parties had not filed their own affidavits show-

ing that they had no knowledge of the pendency of the action prior to the decree. May 15, 1900, Christina Macleod Allen filed a motion to vacate the decree as to her, which motion was supported by an affidavit taken before William Gibron, United States vice-consul and acting consul at the city of Glasgow, Scotland, and afterward the court sustained said motion, and set aside the decree as to Christina Macleod Allen, and allowed her to refile her answer tendered in the case upon the filing of her first motion. A final decree was entered foreclosing the tax lien as to the general city and county taxes and adjudging the sidewalk tax null and void, and from this decree the plaintiff has taken an appeal to this court.

The appellant insists that the district court had no authority to set aside the decree of January 5, 1900, for the reason that no legal affidavits were offered in support of the defendants' motion to vacate said decree. It will be noticed from the foregoing statement that the affidavit of Charles Palmer was taken before a notary public of Prince Edward Island, and the affidavit of Christina Macleod Allen before the vice-consul of the United States at Glasgow, Scotland. As to the Palmer affidavit, there can be no doubt that it comes strictly within the provisions of our statute. Section 371 of our Code of Civil Procedure is as follows: "An affidavit may be made in and out of this state, before any person authorized to take depositions, and must be authenticated in the same way, except as provided in section one hundred and eighteen." Section 375 is in the following language: "Depositions may be taken out of the state by a judge, justice, or chancellor of any court of record, a justice of the peace, notary public, mayor, or chief magistrate of any city or town corporate, a commissioner appointed by the governor of this state to take depositions, or any person authorized by a special commission from this state." A reading of these two sections makes it evident that an affidavit taken before a notary public either in or out of the state of Nebraska may be used in support of a motion or other procedure in court where

necessary. The question of the right to use the affidavit of Christina Macleod Allen, taken before the vice-consul in Glasgow, is one of some difficulty. A somewhat extended examination has shown that there is a dearth of authority upon the question. The general rule is that in the absence of statutory authority an affidavit taken outside the state is of no validity.

In *Welsh v. Hill,* 2 Johns. [N. Y.], 373, it was held: "An affidavit of a plaintiff in a cause residing at Havana, taken before the commercial and naval agent of the United States, resident there, may be read in this court, on a motion for a commission to take the examination of witnesses abroad."

In *Semmens v. Walters,* 55 Wis., 675, it was held that "a consul of the United States may take depositions without a commission." In support of this holding the court refers to section 1750* of the Revised Statutes of the United States [2d ed.], and *Herman v. Herman,*† 4 Wash. [U. S. C. C.], 555. No provision of the Wisconsin statute is cited, and from the fact that the court refers to section 1750 of the Revised Statutes of the United States, we infer that it relied upon that section alone as giving the authority.

In *Savage v. Birckhead,* 20 Pick. [Mass.], 167, it is said: "An American consul, residing in a foreign country and who has been duly accredited there, is a magistrate authorized to take affidavits and depositions in such country, within the meaning of the rule of court respecting commissions to take depositions."

Two other cases,—*Herman v. Herman,* 4 Wash. [U. S. C. C.],555, and *Adams v. State,* 19 Tex. App., 250,—and which throw no light upon the question under consideration, are all the cases which we have been able to find in which a deposition or affidavit executed before a United States consul has been questioned. None of the cases above cited throw any light upon the power of a consul under our statute to take a deposition or an affidavit, and we are therefore driven to an examination of section 1750* of the

---

* U. S. Compiled Statutes, 1901, p. 1196.

† Fed. Cas. No. 6,407.

Revised Statutes of the United States, which in part is as follows: "Every secretary of legation and consular officer is hereby authorized, whenever he is required or deems it necessary or proper so to do, at the post, port, place, or within the limits of his legation, consulate, or commercial agency, to administer to or take from any person an oath, affirmation, affidavit, or deposition, and to perform any notarial act which any notary public is required or authorized by law to do within the United States. Every such oath, affirmation, affidavit, deposition, and notarial act administered, sworn, affirmed, taken, had, or done, by or before any such officer, when certified under his hand and seal of office, shall be as valid, and of like force and effect within the United States, to all intents and purposes, as if administered, sworn, affirmed, taken, had, or done, by or before any other person within the United States duly authorized and competent thereto." Under this section there can be no doubt that affidavits or depositions taken before a United States consul within the limits of his consulate may be properly used in any federal court or before any federal officer or tribunal where such affidavit or deposition is requisite. But the federal congress can not establish rules of evidence or forms of procedure for our courts, and if section 1750 does not confer upon United States consuls the powers and privileges of a notary public within the meaning of our own statute, then an affidavit or deposition taken before them is not properly receivable in our courts. It will be observed that the section above quoted from authorizes every secretary of legation and consular officer to perform any notarial act which any notary public is required or authorized by law to do within the United States. This language undoubtedly confers upon United States consuls every power of a notary public. An officer who may perform any notarial act which a notary public may do, is certainly invested with all the powers possessed by a notary under our statute, or under the statute of any of our sister states; and one who performs the duties of a notary, and who is invested by statute with power and

authority so to do, falls within the meaning of our statute as such official as fully as though his warrant of appointment gave him that name, instead of some other official title. We conclude, therefore, that a United States consul, duly accredited by the federal government to a foreign power, may, under our statute, take affidavits or depositions for use in our courts. This being so, the court did not err in receiving and considering the affidavit of Christina Macleod Allen in support of her motion to vacate the decree.

The appellant further insists that the court erred in vacating the decree so far as it relates to the interest of Christina Macleod Allen, for the reason that she had disposed of her interest in the property in controversy prior to the filing of the motion. In *Powell v. McDowell*, 16 Nebr., 424, this precise point was before the court. Powell, being made defendant in a foreclosure proceeding, was served by publication only. After decree he moved to have the same vacated, and this was denied, because it was shown that he had parted with all interest in the land after the commencement of the action and prior to filing his motion. The first headnote is as follows: "A party against whom a judgment or decree has been rendered, upon service by publication, must show that he has an interest in the subject of the action and that he is entitled to be heard in a defense thereto, before he can be entitled to have the decree or judgment set aside under the provisions of section 82 of the Civil Code." The answer of the defendants filed in this case shows that Christina Macleod Allen had parted with her interest in the premises prior to the filing of her motion to vacate the decree against her. If she had conveyed by warranty deed, so as to be liable on her covenants, she would still have an interest in this lot which she might protect by having the decree vacated, and by making any defense that she might have against the taxes sought to be enforced against the premises. She conveyed, however, by quitclaim deed. Her conveyance contains no covenants against incumbrances of any kind.

She was, therefore, no longer interested in the premises, and had no interest to defend. Upon this ground the court should have refused her motion. This would require a reversal of the decree, so far as the interest in the lot acquired from Christina Macleod Allen is concerned, had the proper steps been taken to correct the error. It has become the settled rule of this court that errors of law occurring at the trial of an equity case can be reviewed by this court only on petition in error. In *Lowe v. Riley,* 57 Nebr., 252, it is said at page 260: "Again, if the district court erred in denying the appellants a jury for a trial of the issues in this proceeding, that was an error of law which occurred at the trial and can not be reviewed on appeal, but only on petition in error." *Frenzer v. Phillips,* 57 Nebr., 229.

The only remaining question is the correctness of the decree upon the merits. The agreed statement of facts upon which the case was tried shows that Andrew J. Hanscom and James G. Megeath deeded to the city of Omaha a large tract of land now known as "Hanscom Park," the deed containing the following condition: "And for the consideration aforesaid we also hereby convey to the said city of Omaha a strip of land eighty (80) feet wide, adjoining and entirely surrounding said park, for the purpose of a public street or highway, and that the said city of Omaha shall lay out and improve said street or highway, and shall forever after keep the same in good order and repair at the expense of the said city, and in case of failure or neglect to comply with any or all of said conditions, then and in that case, the title to said street or highway shall revert back and reinvest in the said parties of the first part, their heirs or assigns, according to their original interests." The sidewalk taxes in controversy in this case were, as before stated, levied and assessed against the lot for the building of a sidewalk abutting thereon, and included within the 80-foot strip described in the deed from which the above quotation was taken. In *City of Omaha v. Megeath,* 46 Nebr., 502, it was held: "Where a strip of ground surrounding a tract of land designed for a public park was

conveyed by parties who owned other land outside of and abutting upon the said strip upon the express conditions in the deed of conveyance, that the grantee should lay out and improve said strip as a street and forever after keep the same in good repair and order at its own expense, such city, for improving or keeping in repair such street, can not require payment by its grantors because of their ownership of the aforesaid abutting property, and the same exemption from liability exists in favor of one who has since purchased a part of said abutting property." This is conclusive of the case at bar. The city was to improve the whole of the 80-foot strip. Whatever street improvements the city may desire to make upon this tract it must make at its own expense. The claim of the appellant that improvements to be paid for by the city should be limited to that part used for a roadway alone, is contradicted by the express terms of the deed. The city must improve the whole strip so far as it desires improvements to be made thereon.

For the reasons above given, we recommend that the decree of the district court be affirmed.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.